Tyra COLEMAN, et al., Plaintiffs,

v.

BLOCKBUSTER, INC., Defendant.

Civil Action No. 05–4506.

United States District Court,
E.D. Pennsylvania.

Oct. 11, 2006.

Carmen L. Rivera Matos, Stewart Wood & Matos, Norristown, PA, John W. Hermina, Laurel Lakes Executive Park, Laurel, MD, for Plaintiffs.

Michael Jonathan Puma, Sarah Elise Pontoski, Morgan Lewis & Bockius LLP, Philadelphia, PA, for Defendant.

## MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

Before the Court are Plaintiffs' Third Motion to Compel Discovery and for Costs and Plaintiffs' Motion for Extension of Discovery Deadline.

## I. BACKGROUND

Plaintiffs bring this action against Defendant Blockbuster, Inc. ("Blockbuster") alleging that their former employer Blockbuster racially discriminated against them through various employment actions including the failure to promote, unequal payment, disparate treatment in training opportunities, and ultimately the termination of employment.

This case has a tortuous history of discovery disputes. The Court had already cut

these disputes down to size in an Order issued on June 15, 2006, in which the Court decided a total of five discovery motions brought by the parties (the "June 15 Order") (doc. no. 52).[1] As detailed below, many of these disputes have now reared their ugly heads again.

## II. PLAINTIFFS' MOTION TO COMPEL

### A. Document Requests

This Court's June 15 Order provided specific instructions as to how the parties should handle disputes over Plaintiffs' document requests. It first provided that "Defendant shall produce all documents withheld on the basis of confidentiality, by June 29, 2006." If Plaintiffs doubted the integrity of Blockbuster's production, the Court instructed that the parties "shall meet and confer" by July 28, 2006. Finally, if the parties could not resolve any outstanding disputes at the meet and confer, the Court allowed Plaintiffs to file "additional requests for production, identifying the items requested and the rationale under which the requested items should be produced, by August 11, 2006."

Plaintiffs again raised the issue of their document requests before the Court. They complained because Blockbuster produced "thousands of duplicative unresponsive preprinted documents that purports to respond to Plaintiffs' requests" and "request[ed] a hearing where they may bring to the Court, all of the documents provided for the Court's examination [so that] this Honorable Court may see for itself what Defendant has failed to produce and how it has provided repetitive, rather than appropriately responsive, documents."[2] Plaintiffs indeed arrived at the hearing regarding their two motions armed with what they represented was Blockbuster's entire document production. However, as in their briefing, they failed to identify for the Court a single item which they requested but did not receive from Blockbuster.

More importantly, Plaintiffs did not follow the Court's clear instructions on how to resolve disputes over Plaintiffs' document requests. This Court was explicit at the previous discovery hearing on June 14, 2006, when it told Plaintiffs they would have to "pinpoint the [documents] you really need here." 6/14/06 Hr'g Tr. at 47. While Blockbuster claims that it produced an additional 6,736 pages of documents previously withheld on the basis of confidentiality, Dft's Brf. at 6, Plaintiffs never met and conferred with Blockbuster to pinpoint which documents they still needed that Blockbuster had not produced.[3] Nor did Plaintiffs file additional requests for production by the August 11, 2006 deadline that the Court established.

### B. The Amended Privilege Log

The Court also laid out a detailed roadmap to follow in resolving disputes regarding Blockbuster's privilege log. The June 15 Order mandated that Blockbuster "shall provide plaintiffs with an amended privilege log, including the titles of any senders and receivers of each document included as privileged, by June 29, 2006." To the extent that Plaintiffs found problems with the amended privilege log, the Court ordered that the parties meet and confer on "any specific requests as to documents listed in defendant's privilege log, by July 28, 2006." Plaintiffs could file specific requests for documents from the amended privilege log by August 11, 2006. As a final safeguard, the Court ordered that "Defendant's response to any requests for documents in the privilege log shall include a submission of the document for the Court's in camera review."

---

1. Those motions included Plaintiffs' Motion to Compel Discovery (doc. no. 25), Defendant's Third Motion to Compel Discovery (doc. no. 30), Plaintiffs' Motion to Strike Defendant's Response (doc. no. 39), Plaintiffs' Motion to Strike Defendant's Motion to Compel (doc. no. 40), and Plaintiffs' Motion for Extension of Time to Complete Discovery (doc. no. 47).

2. Plaintiffs reiterated later in their briefing that they "would like an opportunity to provide the documents to the Court for its review and determination of Defendant's responsiveness."

3. The parties dispute who is to blame for their failure to meet and confer, as ordered by the Court, by July 28, 2006.

Plaintiffs allege in their Third Motion to Compel that Blockbuster's second amended privilege log [4] is deficient because:

> (1) it claims the privilege without providing any explanation as to why the information is privileged; (2) many of the individuals listed on the log are not attorneys; (3) there is little or no information as to what the document contains; and (4) Blockbuster is yet to provide a single document listed in the privilege log or to comply with the Court's order for in-camera review.

As to Plaintiffs' first three allegations, there has been no dispute that each and every document on the amended privilege log relates to Blockbuster's investigation of the Charges of Discrimination filed with the EEOC by Plaintiffs Coleman and Terry. The amended privilege log indicates that either the senders and recipients of most documents it contains are attorneys or other legal personnel whose communications would be privileged.[5] Each document is described in sufficient detail for Plaintiffs to be able to challenge every instance of the claim of privilege.

Again, Plaintiffs did not follow the Court's clear instructions as to how to challenge the amended privilege log. They never met and conferred. They never made specific requests for documents on the amended privileged log. Thus, unsurprisingly, because Plaintiffs never submitted specific challenges of privilege calls to which Blockbuster could respond, Blockbuster never filed any documents in camera with the Court.

### C. Interrogatories

In its June 15 Order, the Court granted Plaintiffs leave to "serve [up to 200] reconsidered and amended interrogatories on defendant by August 11, 2006."

Plaintiffs claim that Blockbuster's "failure" to respond to their untimely [6] interrogatories is so "massive" that its motion could be "several hundred pages without shedding light on the real problem." Pl.'s Mot. to Compel at 7. Instead of describing with particularity the deficiencies of Blockbuster's responses, Plaintiffs attached to their briefing a forty-four page deficiency letter dated September 13, 2006, which they sent to Blockbuster's counsel. This Court cannot do Plaintiffs' work for them by sifting through all forty-four pages to determine which, if any, of the Blockbuster's responses are truly deficient.

The only specific interrogatories that Plaintiffs bring to this Court's attention are Interrogatories 29 and 30. Plaintiffs maintain that Blockbuster's responses to these two interrogatories are "[p]erhaps, the most blatant violation of the spirit and intent of this Court's Order."

Interrogatory 29 requests Blockbuster to provide the job title, department, race, date of hire, and current employment status of seventeen (17) individuals who are listed on Blockbuster's privilege log. However, the June 15 Order required only that Blockbuster provide the "titles of any senders and receivers" of the documents, and Blockbuster included such titles on its amended privilege log. Interrogatory 30 asks Blockbuster to provide a description of each individual's knowledge of Plaintiffs' claims. Blockbuster responds that two of the individuals have no such information and the rest have general information regarding Blockbuster's investigation of Plaintiffs' charges of discrimination. Blockbuster's responses are not blatant violations of the Court's June 15 Order.

---

4. Blockbuster actually amended its privilege log twice. Blockbuster's first amended privilege log, which it produced pursuant to the Court's order on June 29, 2006, contains only the titles of legal personnel. In a letter dated July 6, 2006, Blockbuster informed Plaintiffs that all individuals whose titles were not included were Blockbuster employees not employed in Blockbuster's Legal Department. Blockbuster then produced a second amended privilege on July 25, 2006 that included the titles of all personnel.

5. Some documents that appear on the privilege log appear to be non-privileged documents on which handwritten notes have been made by Blockbuster's Legal Department. Plaintiffs never specifically challenged these documents.

6. Blockbuster points out that Plaintiffs did not serve their 118 reconsidered and amended interrogatories until August 14, 2006. Blockbuster also makes much ado about having been served the interrogatories by fax instead of being "properly served." Dft's Brf. at 9.

The controversy related to Plaintiffs' remaining interrogatories, and indeed all the still-festering discovery disputes in this case, appears to revolve around a memorandum dated April 16, 2004, and purportedly authored by Cari–Ann Urbanek, that references an "African–American Stores" module that Blockbuster claims to employ for marketing purposes (the "April 16 Memo").[7] Plaintiffs have interpreted the April 16 Memo to mean that Blockbuster has an explicit policy of "classification of stores along racial lines." *See* Pl.'s Interrogatory No. 2. Thus, Interrogatory 1 asks Blockbuster to "indicate whether Defendant labels or has ever labeled stores in predominantly white areas as 'white' or 'regular' stores, African American areas as 'African American' or 'Black' stores, Hispanic, etc."

Blockbuster responds to such interrogatories that "it does not have a policy to label stores by race based on the location or areas of the store," but many of Plaintiffs' subsequent interrogatories assume such a policy to exist.[8] When Blockbuster then claims that Plaintiffs' subsequent interrogatories are irrelevant, Plaintiffs believe that Blockbuster is playing "games of evasion."

It is not the proper juncture for the Court to make any determination as to the substance of the Blockbuster policy embodied in the April 16 Memo. However, as discussed further below, the Court has already cautioned Plaintiffs that the most appropriate way to obtain information about the "African–American Stores" referenced in the August 16 Memo is likely through a 30(b)(6) deposition or a deposition of the author of the August 16 Memo herself, rather than though hundreds of written interrogatories.

In any case, Plaintiffs have not called to the Court's attention any particular interrogatories, other than Interrogatories 29 and 30, to which they wish to compel Blockbuster's response. Local Rule of Civil Procedure 26.1(b) requires that "[e]very motion pursuant to the Federal Rules of Civil Procedure governing discovery shall identify and set forth, verbatim, the relevant parts of the interrogatory." Plaintiffs have run afoul of both the technical requirements of this rule as well as its underlying policy. Local rule 26.1(b) is clearly designed to force parties to bring into sharp focus the particular discovery disputes that they want a court to resolve. *See, e.g., Grider v. Keystone Health Plan Cent.*, 2004 WL 902367, at *4, 2004 U.S. Dist. LEXIS 9014, at *16–17 (E.D.Pa.2004) ("[I]t is incumbent on plaintiffs to provide the court with the exact language of each interrogatory and request for production of documents so that we are able to assess defendants' compliance with each request."). Otherwise, courts are left to wade through a morass of paperwork that bogs down judicial resources. *See AT & T Corp. v. Universal Communs. Network, Inc.*, 1999 WL 239077, at *1, 1999 U.S. Dist. LEXIS 5651, at *2–3 (E.D.Pa.1999) ("Plaintiff has failed to comply with the Court's Local Rule 26.1(b), with the result that it is necessary to examine numerous documents, including a lengthy affidavit, in order to obtain at least some vague idea as to what the discovery dispute is all about.")

### D. The 30(b)(6) Deposition

In its June 15 Order, the Court granted Plaintiffs "leave to take the deposition of the author of the April 16, 2004 Memorandum from the Product and Marketing Department of Blockbuster to 'African–American Stores,' and/or a Rule 30(b)(6) deponent."

Plaintiffs have not yet taken such a deposition because they appear to believe they are entitled to learn everything about the April 16 Memo through interrogatories before taking it. This Court made clear to Plaintiffs at the June 14, 2006 hearing that "you can't get all that information through interrogatories [because] the system isn't really ready for that." 6/14/06 Hr'g Tr. at 47.

---

7. Although neither party attaches a copy of the April 16 Memo to their briefing, Blockbuster's discovery responses indicate that the April 16 Memo pertained to the promotion of the movie "You Got Served."

8. Thus, for example, Interrogatory 2 asks for "the reason(s) supporting [Blockbuster's] decision for the classification of stores along racial lines," and Interrogatory 3 asks for "any studies or research that support dividing stores and employees based on race."

Plaintiffs also fear that "by requiring Plaintiff to obtain the information [about the April 16 Memo] through a 30(b)(6)" deposition, "Defendant is hoping to avoid answering the interrogatories and differing [sic] to a corporate representative who is unlikely to have the requested information at the deposition." This fear is unfounded. Indeed, the very purpose of the rule's forcing a corporation to designate a deponent to testify regarding particular matters is to "curb the 'bandying' by which officers or managing agents of a corporation are deposed in turn but each disclaims knowledge of facts that are clearly known to persons in the organization and thereby to it." Fed. R.C.P. § 30(b)(6), cmt.

■ The Third Circuit has held that "when a witness is designated by a corporate party to speak on its behalf pursuant to Rule 30(b)(6), 'producing an unprepared witness is tantamount to a failure to appear' that is sanctionable under Rule 37(d)." *Black Horse Lane Assoc., L.P. v. Dow Chem. Corp.,* 228 F.3d 275, 304 (3d Cir.2000). Thus, the designated deponent has a "duty of being knowledgeable on the subject matter identified as the area of inquiry." *Jurimex Kommerz Transit G.M.B.H. v. Case Corp.,* 2005 WL 440621 at *3, 2005 U.S. Dist. LEXIS 2827 at *8 (D.Del.2005). A corporation must "prepare its selected deponent to adequately testify not only on matters known by the deponent, but also on subjects that the entity should reasonably know." *SmithKline Beecham Corp. v. Apotex Corp.,* 2004 WL 739959 at *2, 2004 U.S. Dist. LEXIS 8990 at *5 (E.D.Pa.2004).

Blockbuster clearly offered to produce Ms. Urbanek, the author of the April 16 Memo. Such a deposition offered Plaintiffs an excellent opportunity to learn additional information about the April 16 Memo and advance the Plaintiffs' case. Plaintiffs squandered this opportunity.

Blockbuster also offered to produce a 30(b)(6) deponent with knowledge of Blockbuster's module-based marketing scheme. However, Blockbuster did not provide the name or position of the 30(b)(6) deponent it had offered to produce. Rule 30(b)(6) clearly contemplates that a corporation "designate" a person who consents to testify on its behalf. Blockbuster's failure to designate a particular deponent made it difficult for Plaintiffs to prepare for such a deposition.

### E. Company Statistics

Plaintiffs also claim that Blockbuster has "refused to provide any documents, information, or statistics related to any other employees of the Company." Pl.'s Mot. to Compel at 15. They cite the case of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 804–5, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), in support of their argument that Blockbuster must provide such discovery.

In *McDonnell,* the United States Supreme Court held that "statistics as to petitioner's employment policy and practice may be helpful to a determination of whether petitioner's [adverse employment action] conformed to a general pattern of discrimination against blacks." 411 U.S. at 805, 93 S.Ct. 1817. While the Supreme Court cautioned that "such general determinations, while helpful, may not be in and of themselves controlling as to an individualized hiring decision, particularly in the presence of an otherwise justifiable reason for refusing to rehire," *id.* at 805 n. 19, 93 S.Ct. 1817, in a later case the Supreme Court held that "gross statistical disparities" alone may, in certain cases, constitute prima facie proof of discrimination. *Hazelwood School Dist. v. United States,* 433 U.S. 299, 307–08, 97 S.Ct. 2736, 53 L.Ed.2d 768 (1977).

■ Statistics regarding racial disparities in Blockbuster's employment practices are clearly relevant and discoverable. Here, however, Plaintiffs have left it to the Court to guess which of their requests are relevant to such "statistics." Because they have not specified which of their hundreds of discovery requests seek such "statistics," they have made it impossible for the Court to decide the merits of any particular discovery request.[9] *See* Local Rule 26.1(b).

---

9. Interrogatory 14 presumably seeks such statistical discovery when it asks for "the Defendant's

employee profile, specifying name, date of hire, date of termination or resignation and race of

As discussed above, even if the Court could on its own identify which requests seek the relevant "statistics," Plaintiffs failure to abide by the Court's June 15 Order is alone sufficient reason to deny Plaintiffs' motion to compel a response to such requests.

### F.   Conclusion

Thus, for the reasons set forth above, the Court will deny Plaintiffs' Third Motion to Compel Discovery and for Costs.

## III.   MOTION FOR DISCOVERY EXTENSION

▆  Plaintiffs have also brought their second Motion for Extension of Discovery Deadline.  In it, they argue essentially that while Blockbuster "has been able to obtain all of the information necessary for their defense" through discovery that was "extensive and covered every aspect of Plaintiffs' lives," Plaintiffs "have yet to obtain any substantial discovery as a result of Defendant's defiance."  Defendants respond that "Plaintiffs have had ample opportunity to pursue discovery" and "have demonstrated that extensions of discovery are fruitless."

At this juncture, the Court finds that an extension of the discovery deadline in this case is warranted to allow Plaintiffs to fine-tune their discovery requests and for the parties to resolve their outstanding disputes, so that the case can ultimately be decided on its merits.  The Court will grant Plaintiffs' Motion for Extension of Discovery Deadline.

An appropriate order will be entered.

### ORDER

**AND NOW,** this **11th** day of **October, 2006,** upon consideration of Plaintiffs' Third Motion to Compel Discovery (doc. no. 65), Plaintiffs' Second Motion for Extension of Time to Complete Discovery (doc. no. 66),

and Defendant's Response in Opposition thereto (doc. no. 68), and upon hearing oral argument from the parties, it is hereby **ORDERED** that Plaintiffs' Third Motion to Compel Discovery (doc. no. 65) is **DENIED** and Plaintiffs' Second Motion for Extension of Time to Complete Discovery (doc. no. 68) is **GRANTED.**

**IT IS FURTHER ORDERED** that:

1.  Plaintiffs are granted leave to resubmit specific discovery requests in the form of interrogatories and/or requests for the production of documents by **November 10, 2006;**

2.  Defendant shall respond to plaintiffs' discovery requests by **November 27, 2006;**

3.  Thereafter, the parties shall meet and confer, at a time and place agreed to by the parties, as to any outstanding discovery requests of plaintiffs and as to any specific requests as to documents listed in defendant's second amended privilege log by **December 11, 2006;**

3.  Plaintiffs may then request that the Court rule on specific discovery items in dispute.[10]  The Court will at that time also determine whether appointment of a special discovery master is appropriate in this case.  *See* Fed. R.C.P. § 53;

4.  At any time, Plaintiffs may notice the deposition of Cari–Ann Urbanek and/or a Rule 30(b)(6) deponent in conformity with the requirements of Rule 30(b)(6).  Defendant's designation in response to any Rule 30(b)(6) notice of deposition shall also comply with Rule 30(b)(6), including the identification of the name and position each designee;

5.  Once discovery is completed, the Court shall provide a briefing schedule for

each employee, at any of the stores in which the Plaintiffs were employed from January 2003 until store closing or the present if store is currently in operation."  Similarly, Interrogatory 17 asks for "the present number of African American employees and the number of white or Caucasian employees in each job category at each facility operated by the Defendant in Eastern Pennsylvania."

**10.**  No such motion regarding discovery shall be entertained unless it is certified that the parties have met and conferred in person and discussed each of the specific items that plaintiffs have requested and that remain in dispute.

the filing of motions of summary judgment.

**IT IS FURTHER ORDERED** that all requests for sanctions are **DENIED** without prejudice but may be reasserted at the completion of discovery.

**AND IT IS SO ORDERED.**